IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Michael Ladale Reeves, | ) | |
| | ) | Civil Action No. 6:16-715-HMH-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Hampton Forest Apartments, | ) | |
| Betty Parr, Monument Real | ) | |
| Estate Services, and Jenny | ) | |
| Decker, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the plaintiff's motions for summary judgment and for default judgment (docs. 69, 90), the defendants' motion for summary judgment (doc. 78), and several nondispositive motions by the plaintiff and defendants (docs. 65, 66, 72, 91, 92, 97, 112, 113). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

On March 4, 2016, the plaintiff filed a *pro se* complaint alleging that the defendants, which include the apartment complex where he lives and the management of the complex, have discriminated against him by making false allegations against him and sending him a lease termination letter (docs. 1 & 1-1). He alleges violations of the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.), the Fair Housing Act (42 U.S.C. § 3601 *et seq*.), his rights under the First Amendment to the United States Constitution, and various forms of harassment, intimidation, retaliation, and defamation (*see* docs. 1, 16, 28). He seeks a "formal and public apology," two million dollars "in punitive damages and for emotional distress," and the dismissal of defendants Betty Parr and Jenny Decker from their jobs (doc. 1 at 7).

On September 8,  2016, the plaintiff filed a motion for summary judgment (doc. 69), to which the defendants filed a response on September 23, 2016 (doc. 79).  Also on September 23, 2016, the defendants filed their own motion for summary judgment (doc. 78).  On September 26, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 82). The plaintiff filed his response in opposition to the defendants' motion on October 5, 2016 (doc. 86).  The defendants filed a reply in support of their motion on October 17, 2016 (doc. 93).  On October 14, 2016, the plaintiff filed a motion for default judgment (doc. 90), to which the defendants filed opposition on October 31, 2016 (doc. 103).  The plaintiff filed a reply on November 15, 2016 (doc. 122).  In addition, as noted above, numerous nondispositive motions have been filed by both the plaintiff and the defendants.

## FACTS PRESENTED

Defendant Hampton Forest Apartments is a private, residential apartment complex located at 2207 Wade Hampton Boulevard in Greenville, South Carolina. Defendant Monument Real Estate Services is the current property management company for the Apartments.   Defendant Betty Parr was employed by Monument Real Estate Services as the on-site Community Manager during the time period at issue here. Defendant Jenny Decker, whom the defendants state is correctly identified as Ginny Decker, is the Vice President of Property Management at Monument Real Estate Services.

On or about June 23, 2015, Ms. Parr received a written complaint from John Dunlap, III, the tenant living in apartment D205 at Hampton Forest Apartments (doc. 78-1, Parr aff. ¶ 5).  Mr. Dunlap complained that the tenant in the unit above his (D305), where the plaintiff was the tenant, "is urinating on the balcony of his apartment, which then falls onto our balcony. . . .  This is also damaging our porch furniture" (*id.* ¶¶ 4-5; doc. 78-2, 6/23/15 letter).   Prior to the letter, Mr. Dunlap had complained verbally to property management about the plaintiff's behavior on at least two occasions (doc. 78-1, Parr aff. ¶ 4).   Ms. Parr states in her affidavit that when she brought these complaints to the

2

plaintiff's attention, he became combative and hostile (*id.* ¶ 7).  The plaintiff states in his complaint that Ms. Parr "falsely accused [him] of urinating off [his] balcony" (doc. 1 at 4). The plaintiff began making posts about Ms. Parr on the Hampton Forest Apartments Facebook page, stating in one, "You can be fat, lazy and smoke.  I can't afford to be" (doc. 78-3, Facebook posts).  The plaintiff claims that Ms. Kerre Allen, who came to Ms. Parr's defense on the Facebook page after the plaintiff made comments about Ms. Parr, was not a resident of the apartments but rather was a "plant sent by Ms. Parr" (doc. 86-1 at 5-6). He also claims that Ms. Allen's comments on the Facebook page caused him medical complications and prove his claims of harassment, retaliation, stalking, cyberstalking, and a violation of his First Amendment Rights (*id.*).  According to Ms. Parr, Ms. Allen was a tenant at Hampton Forest Apartments while Ms. Parr was Community Manager (doc. 93-5, Parr aff. ¶ 9), and Ms. Allen came to Ms. Parr's defense on her own accord (*id.*).

According to Ms. Parr and Ms. Decker, the plaintiff also left vulgar or threatening voice messages at the Hampton Forest Apartments office (doc. 78-1, Parr aff. ¶ 7; doc. 93-1, Decker aff. ¶ 5).  Some of the plaintiff's telephone messages were documented in his tenant file (doc. 93-2, messages).  Ms. Decker states in her affidavit that the plaintiff also called the customer care line for Monument Real Estate Services approximately six times and left messages, many of which were hostile and vulgar and actually caused her concern for Ms. Parr's safety (doc. 93-1, Decker aff. ¶ 4). Ms. Decker's recollection is that the plaintiff's calls were returned by the Regional Manager and that his issues were addressed by the Regional Manager and Ms. Parr (*id.*).

According to Ms. Parr, she also learned that there had been prior incidents regarding the plaintiff's behavior with management, including an incident of inappropriate conduct by the plaintiff toward the former Assistant Property Manager, Amelia Callahan (doc. 78-1, Parr. aff. ¶ 8).  With regard to that incident, Ms. Callahan wrote the plaintiff a letter, dated October 27, 2014, advising him that she no longer wished to have contact with him by phone, Facebook, written letters, email, or in person (doc. 78-9, letter).  Ms. Callahan also filed a prowler complaint against the plaintiff with the Greenville County

3

Sheriff's Office on or about October 27, 2014 (doc. 78-10).  In his response in opposition to the defendants' motion, the plaintiff contends that it was impossible for him to have "romantic notions" regarding Ms. Callahan due to his "renal insufficiencies" and inability to "perform" (doc. 86-1 at 16).  The defendants reference Facebook message exchanges purportedly between the plaintiff and Ms. Callahan that they contend show the plaintiff's "romantic" intentions toward Ms. Callahan (doc. 93-6, messages).

Based upon the foregoing, on February 25, 2016, Ms. Parr sent the plaintiff a lease termination letter (doc. 78-1, Parr aff. ¶ 9; doc. 78-4, letter).  The lease termination letter notified the plaintiff that his lease was being terminated effective March 31, 2016, for default of Section 19 of the lease, which pertains to prohibited conduct (doc. 78-4, letter; *see also* doc. 78-5 at 2, lease).  Prohibited conduct under the lease includes "disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community" (doc. 78-5 at 2, lease).  Section 31 of the plaintiff's lease authorizes the property manager to lawfully seek eviction in the case of default by the tenant (doc. 78-5 at 4, lease).

The plaintiff filed the complaint in this action on March 4, 2016 (doc. 1).  The defendants attempted to proceed with their eviction action, but upon the defendants' information and belief, the hearing was stayed upon request of the plaintiff due to the pendency of this action.  The plaintiff's lease expired on August 31, 2016 (doc. 78-5 at 1, lease).  In order to preserve its rights under the lease, current Property Manager Laura Higginbotham sent the plaintiff a 60-day notice of lease termination/expiration on June 29, 2016 (doc. 54-1, notice).  The plaintiff sent Hampton Forest Apartments a check totaling $574 for September 2016 rent.  In order to preserve its rights under the lease, on September 8, 2016, Ms. Higginbotham, returned the plaintiff's check to the plaintiff rather than deposit it (doc. 72-1).

In opposition to the defendants' motion for summary judgment, the plaintiff suggests that the defendants vandalized his car on October 3, 2016, in retaliation for filing the instant lawsuit (docs. 88, 89).  The plaintiff includes photographs purporting to show the

vandalism (doc. 88-1, photographs), and he argues that the photographs prove his claims in this lawsuit (doc. 86 at 9).

The plaintiff further claims that a leaking condensing unit on his balcony explains Mr. Dunlap's multiple complaints regarding the plaintiff urinating off of his balcony onto the balcony below (doc. 86 at 10; doc. 86-1 at 1, 3). The plaintiff includes several photographs that he claims depict a leak in the condensing unit on his balcony (doc. 86-5). He states that these photographs prove "without doubt everything Plaintiff has said is true, credible, and irrefutable" (doc. 86-4 at 1). He also states that had the defendants performed a proper investigation, they would have discovered that the condensing unit was "the culprit" (*id.*). According to Ms. Parr, maintenance staff at Hampton Forest Apartments inspected the plaintiff's condensing unit shortly after Ms. Parr received Mr. Dunlap's June 23, 2015, complaint letter (doc. 93-5, Parr aff. ¶ 7). They reported back to Ms. Parr that the plaintiff's condensing unit was functioning properly and showed no evidence of leaking (*id.*). The maintenance personnel also told Ms. Parr that the location of the condensing unit on the plaintiff's balcony was not located directly above where Mr. Dunlap saw and felt liquid coming from the plaintiff's balcony (*id.*). Mr. Dunlap also informed Ms. Parr that on one of the occasions while he was wiping up the liquid from his balcony, he noticed the liquid was yellow in color (*id.* ¶ 8). All of this caused Ms. Parr to rule out the condensing unit on the plaintiff's balcony as the cause of Mr. Dunlap's complaints (*id.*).

The plaintiff submitted three unsworn statements from persons responding to questions posed by the plaintiff (*see* doc. 78-8 at 8). All three persons state that Ms. Parr told them she had complaints regarding the plaintiff urinating off of his balcony, and she had photographs of him doing it (doc. 86-2, statements). The persons also state that the plaintiff has never annoyed or angered them (*id.*).

## APPLICABLE LAW AND ANALYSIS

### *Motion for Default Judgment*

The plaintiff contends that he mailed "request for CPCR 56" on August 6, 2016, and that "if Defendants were given 'The Roseboro Defense,' they had until

[September 13, 2016] to respond" (doc. 90 at 2).  The plaintiff argues that since the defendants did not request an extension and did not file a timely response, he is entitled to entry of default judgment for $24,200,000 (*id.*).

Federal Rule of Civil Procedure 55(a) provides that when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Rule 55(b) provides that a party must then apply to the court for a default judgment.  *Id.* 55(b).

The defendants timely filed an answer to the plaintiff's complaint (*see* doc. 32), so the plaintiff's motion for default is meritless. It appears that the"request for CPCR 56" to which the plaintiff refers is his motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, which was filed on September 8, 2016 (doc. 69).  The defendants' response was due on or before September 26, 2016 (*see* doc. 69) and was timely filed on September 23, 2016 (doc. 79).

Based upon the foregoing, the plaintiff's motion for default judgment (doc. 90) should be denied.

### *Motions for Summary Judgment*

Both the plaintiff and the defendants have moved for summary judgment (docs. 69, 78).  Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

6

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Fair Housing Act

The defendants are entitled to summary judgment on the plaintiff's claim for violation of the Fair Housing Act ("FHA"). Congress enacted the FHA in 1968, making it illegal to discriminate in housing practices on the basis of race, color, religion, sex, familial status, or national origin*. See* 42 U.S.C. §§ 3601–3619. Congress later amended the Act so as to extend protection of the FHA to include people with disabilities. *Id.* § 3604(f). Under the FHA, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2). In order to establish such a claim, a plaintiff must demonstrate that the housing action or practice being challenged was motivated by a discriminatory purpose

or had a discriminatory impact. *See Wadley v. Park at Landmark, LP,* 264 F. App'x 279, 281 (4th Cir. 2008) (citing *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 986 (4th Cir. 1984)). The plaintiff has the initial burden of establishing a *prima facie* case, and, once established, the defendant may produce a legitimate, non-discriminatory reason for the taking of the action. *See Betsey*, 736 F.2d at 988.  If the defendants produce such a legitimate reason for their action, the burden shifts to the plaintiff to show the defendant's rationale is pretext for discrimination. *See Martin v. Brondum*, 535 F. App'x 242, 245 (4th Cir. 2013).

The plaintiff has failed to present any evidence supporting his claim that the defendants have made false allegations against him and initiated eviction proceedings because of his alleged physical impairments.  It is the plaintiff's position that since the defendants attempted to evict him based on what he contends were false accusations from Mr. Dunlap, he has proven his case under the FHA (doc. 86-3 at 1).  He further states that without sworn testimony from Mr. Dunlap that he "unmistakenly saw Plaintiff" urinating onto or off of his balcony and without photographs from Ms. Parr documenting the plaintiff urinating onto or off of his balcony, housing discrimination is proven (*id.* at 1-2).  This position, however, has no support in law or logic and is inadequate to create an issue of fact precluding dismissal of the claim.

To the extent the plaintiff alleges a retaliation claim under the FHA, summary judgment is also appropriate.  The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.  "In order to [state] a claim of retaliation under the FHA, a plaintiff must [allege] that:  (1)  the plaintiff was engaged in a protected activity; (2) the defendant was aware of that activity; (3)  the defendant took adverse action against the plaintiff; and (4)  a causal connection exists between the protected activity and the adverse action." *Hall v. Greystar Mgmt. Serv., L.P.,* 28 F.Supp.3d 490, 495 (D. Md. 2014). To survive a motion to dismiss an FHA retaliation claim, a plaintiff "must sufficiently allege a

8

discriminatory intent on the part of Defendants." *Bailey v. Vill. Green Mut. Homes*, C.A. No. RWT 12–cv–3079, 2014 WL 198348, at \*3 (D. Md. Jan.14, 2014) (citing *Oxford House v. Town of Fayetteville*, C.A. No. 1:11–00402, 2012 WL 441156 (S.D. W. Va. Feb. 10, 2012)).

Other than his bare, conclusory assertions, the plaintiff has presented no evidence that there was any discriminatory intent behind the defendants' actions. Accordingly, the plaintiff has not and cannot state a cognizable claim under the FHA, thereby entitling the defendants to summary judgment as a matter of law.

### *Americans with Disabilities Act*

The defendants are also entitled to summary judgment on the plaintiff's claim under the Americans with Disabilities Act ("ADA"). Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. §12182(a). However, a private residential apartment complex such as Hampton Forest Apartments is not a public accommodation under the ADA and, therefore, not subject to ADA compliance. *See Hardaway v. Equity Residential Servs*., C.A. No. DKC 13-0149, 2015 WL 858086, at \*5 (D. Md. Feb. 26, 2015) (holding that residential apartment complexes, such as the one where plaintiff resided, do not constitute a public accommodation within the meaning of the ADA). Moreover, as with the FHA claim, the plaintiff has failed to present anything other than his own conclusory allegations that the defendants discriminated against him on the basis of his alleged disability. Accordingly, summary judgment should be granted on this claim.

### *First Amendment*

The plaintiff alleges that the defendants violated his First Amendment rights by terminating his lease and attempting to evict him after he criticized the defendants on the Hampton Forest Apartments' Facebook page (docs. 1, 16, 28). Title 42, United States Code, Section 1983 provides that any person who, while acting under color of state law, deprives another of any right, privilege, or immunity secured by the United States Constitution, shall be liable in a civil action. *See* 42 U.S.C. §1983. Therefore, a claim made

under the First Amendment requires there to have been some form of state action. *See Wooley v. Maynard*, 430 U.S. 705, 714-15 (1977) (discussing how the First Amendment protects the right of freedom of speech against state action).  Purely private conduct, no matter how wrongful, is not actionable under Section 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (noting that rights secured by the Constitution are protected only against government infringement).  In the instant case, there has been no infringement of the plaintiff's First Amendment rights by a state actor.  Ms. Parr and Ms. Decker are not public employees or officials.  Rather, they are private individuals working for Monument Real Estate Services, a private company.  Hampton Forest Apartments is likewise a private entity.  "Simply put, the defendant is a private entity, not a governmental entity, and thus is legally incapable of violating anyone's First Amendment rights." *Manson v. Little Rock Newspapers, Inc.*, 200 F.3d 1172, 1173 (8th Cir.2000).  Accordingly, summary judgment should be granted on this claim.

### *State Law Claims*

It also appears that the plaintiff has alleged a state law claim of defamation (*see* doc. 1 at 5 (alleging "slander, libel and defamation and overall damage to my name, reputation, and character")).  Having found that the defendants are entitled to summary judgment regarding the plaintiff's federal claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

### CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned recommends that the defendants' motion for summary judgment (doc. 78) be granted and that the plaintiffs' motions for summary judgment and for default judgment (docs. 69, 90) be denied.  Should the district court adopt this recommendation, all pending nondispositive motions will be rendered moot (*see* docs. 65, 66, 72, 91, 92, 97, 112, 113).

IT IS SO RECOMMENDED.

January 5, 2017                                             s/ Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge

10

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).